Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen DeNittis, Esq. (Pro Hac Vice application to be submitted)
Shane T. Prince, Esq. (Pro Hac Vice application to be submitted)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

*Attorneys for Plaintiff and the Proposed Classes*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ANDREWS, for Himself, as a Private Attorney General, and/or On Behalf Of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>RING LLC,<br><br>                    Defendant. | Case No. 5:20-cv-00889-RGK-SP<br><br>CLASS ACTION<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>(1) VIOLATION OF CAL. CIVIL CODE § 1750<br><br>(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500<br><br>(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200<br><br>JURY TRIAL DEMANDED |

Plaintiff James Andrews, individually, as a private attorney general, and/or on behalf of all others similarly situated, alleges as follows, on personal knowledge and investigation of his counsel, against Defendant Ring LLC ("Ring" or "Defendant"):

FIRST AMENDED CLASS
ACTION COMPLAINT                    - 1 -

**HATTIS & LUKACS**
400 108th Ave NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## INTRODUCTION AND SUMMARY

1.      This is a class action, brought under California law, on behalf of all United States citizens who, within the applicable limitations period, purchased certain "Ring" brand video doorbell and security camera products at brick and mortar stores located in the United States, which products failed to indicate on the outside of the sealed packaging that the video recording, playback, and snapshot features of these cameras would only operate if the consumer paid an additional fee of $3 per month (or $30 per year) per device for a subscription referred to by Defendant as the "Ring Basic Protect Plan" (hereinafter the "Protect Plan").

2.      Ring video doorbells and security cameras have become ubiquitous in the past several years, with these products being promoted as a low-cost and efficient way of enhancing home security through monitoring one's front door and deterring potential intruders, "package thieves," vandals, and burglars.

3.      A key feature of any such deterrent effect is the fact that the Ring video doorbells and security cameras not only show a "live feed" of the area in front of the camera in real time, but they also record that video footage and take still image snapshots which are stored and can be viewed and played back by the homeowner at a later time. These video recording and image snapshot features include the ability to transfer and save the videos and snapshots onto another device, and to transmit them to the police or to whomever the homeowner wishes to share the video or snapshot with.

4.      Without the ability to record video, take snapshots, or view, store and play back such video and still images, Ring video doorbells and security cameras are nothing more than an expensive electronic alternative to looking out one's window or a "peephole" to see who is currently standing at one's front door.

5.      These video recording, playback and snapshot features of the Ring video doorbells and security cameras are only accessible by the consumer, however, if the consumer also buys an additional, inadequately disclosed Protect Plan service from Ring, which requires payment of an additional monthly fee of $3 (or yearly fee of $30) per device.

| FIRST AMENDED CLASS | - 2 - | **HATTIS & LUKACS** |
| ACTION COMPLAINT | | 400 108th Ave. NE, Ste 500 |
| | | Bellevue, WA 98004 |
| | | T: 425.233.8650 \| F: 425.412.7171 |
| | | www.hattislaw.com |

6.      A homeowner who does not purchase Defendant's Protect Plan recording service for $3 per device per month (or $30 per device per year) can *only* see a "live feed" of whoever or whatever is standing in front of the camera at that particular moment. Such a homeowner cannot record or playback video or transfer or save any such images, and cannot view any moving or still images of the area before or after the current moment.

7.      This lawsuit does not contend that there is any defect with the Ring video doorbell products or security cameras themselves, or that it is inappropriate *per se* to require a purchaser of a Ring video doorbell or security camera to purchase an additional subscription service in order to enable the camera to record video and play back moving or still images.

8.      Rather, the central claim in this case is that, if Ring is going to require a consumer who buys a Ring video doorbell or security camera to purchase the Protect Plan service for an *additional* fee per device of $3 per month or $30 per year in order to enable the video recording, playback and snapshot features to function—which features are essential to the product's utility, and are a key reason why a consumer would purchase the product—then the existence of that additional monthly or yearly fee is a material fact that must be stated clearly to a potential purchaser on the outside of the sealed box so the consumer can make an informed decision at the time of purchase. Ring's conduct and its material omissions on the Ring video doorbell and security camera boxes that the video recording and snapshot features are in fact only functional upon paying an additional monthly fee of $3 or yearly fee of $30, are deceptive and misleading in violation of California law.

9.      Ring's conduct and its omissions of material facts on its package advertising have enabled Ring to entice customers to purchase its video security products by misrepresenting the cost customers must pay for Ring products with functioning video recording, playback and snapshot features, both in absolute dollar costs and relative to the price of competing security camera products from other manufacturers which—unlike Ring—*include* free cloud recording, playback and snapshot features *without* requiring the payment of additional monthly or yearly fees.

---

FIRST AMENDED CLASS
ACTION COMPLAINT

- 3 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

10.     Plaintiff James Andrews brings this action individually on his own behalf as a deceived Ring LLC customer and as a private attorney general seeking an order for public injunctive relief to protect the general public, directing that the outside product packaging for Ring video doorbells and security cameras include prominent disclosures that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional fee of $3 per month or $30 per year per device. Plaintiff also brings this action as a representative plaintiff on behalf of nationwide classes (and state-wide subclasses) of consumers who purchased Ring products from brick and mortar stores in the United States where the outside boxes of the products did not include such disclosures, seeking, among other things, to recover damages and/or that Defendant be ordered to disgorge all revenues Defendant has unjustly received from the members of the classes. Plaintiff also seeks an order requiring Defendant to offer Plaintiff and class members the ability to use the video recording, playback and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

11.     Plaintiff brings these claims under California statutory authority and principles of equity including the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; the False Advertising Law, California Business & Professions Code § 17500 *et seq.*; and the Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*

## THE PARTIES

12.     Plaintiff James Andrews is a citizen of the United States of America and California and is an individual and a natural adult person who resides in Riverside County, California.

13.     Like all members of the proposed class, Plaintiff Andrews is a United States citizen who purchased a Ring video camera product at a brick and mortar store located in the United States, which product failed to indicate on the outside of the sealed box that the video recording, playback and snapshot features of the camera would only operate if the purchaser also purchased an additional Protect Plan "subscription" from Ring for a fee of $3 per month or $30 per year, per device, to be paid in perpetuity. Specifically, Plaintiff Andrews purchased a

"Ring Indoor Cam Plug-In Security Camera" for $59.99 and a "Ring Video Doorbell 2" for $169.99 at a Best Buy store located in Beaumont, California on March 11, 2020, neither of which contained any language on the outside sealed box, or in any other form visible at the time of purchase, which indicated that the video recording, playback or snapshot features of these cameras could only be accessed if Plaintiff also purchased an additional Protect Plan subscription from Ring for a fee of $3 per month per device every month in perpetuity.

14.     Defendant Ring LLC is a limited liability corporation with its principal place of business and/or nerve center located at 523 26th Street, Santa Monica, California 90404. Based on the investigation of Plaintiff's counsel, Ring LLC is a wholly-owned subsidiary of Amazon.com, Inc. Based on the investigation of Plaintiff's counsel, Ring LLC is a citizen of the State of Washington because it is a limited liability company whose member, Amazon.com, Inc., is a citizen of the State of Washington. Ring LLC manufactures, distributes, markets and sells the Ring doorbell and security cameras purchased by the classes, and designs the packaging and implements the policies at issue herein, from its headquarters in California.

## JURISDICTION AND VENUE

15.     **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)—*i.e.*, Class Action Fairness Act jurisdiction —because the amount in controversy exceeds the sum or value of $5 million (exclusive of interest and costs) and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant.

16.     **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant because: (1) Defendant Ring LLC is headquartered in Santa Monica, California (which is within the Central District of California) and is authorized to do business and regularly conducts business in the State of California such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice; and/or (2) Defendant has committed tortious acts within the State of California (as alleged, without limitation, throughout this Complaint).

17.     **Venue**. Venue is proper in the Central District of California because, pursuant to

FIRST AMENDED CLASS
ACTION COMPLAINT                                    - 5 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

28 U.S.C. § 1391(b)(2), this judicial district is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; specifically, Plaintiff Andrews purchased the products which are the subject of this civil action at a Best Buy store located in Beaumont, California on March 11, 2020. Also, this civil action may be brought in a judicial district where Ring LLC resides, and pursuant to 28 U.S.C. § 1391(c)(2), for venue purposes Ring LLC shall be deemed to reside in this judicial district because Ring LLC is subject to the court's personal jurisdiction with respect to this civil action.

## FACTUAL ALLEGATIONS

18.     Ring holds itself out to the public as a leader in home security which manufactures home security products that incorporate indoor and outdoor motion-detecting cameras, including Ring video doorbells and security cameras.

19.     The Ring video doorbell is the company's flagship product. The first version of the Ring video doorbell (hereinafter, the "Ring Video Doorbell 1") was introduced in 2013. The Ring video doorbell products are marketed as a smart doorbell that contains a high-definition video camera, a motion sensor, and a microphone and speaker for two-way communication.

20.     The Ring video doorbell integrates with an associated smartphone "app," which allows users to view real-time and recorded video from the camera, receive notifications when the doorbell is rung, communicate with visitors at the door, and share the recorded video and snapshots with friends and family.

21.     In 2015, Ring came out with its first video security camera, called the "Ring Indoor Cam Plug-In Security Camera," which is a camera with "live-feed" viewability and video recording and playback features. The Ring Indoor Cam Plug-In Security Camera was updated in 2018 with motion detection and two-way audio.

22.     In 2017, a second-generation video doorbell, the Ring Video Doorbell 2, was released with updated hardware and improved low-light performance.

23.     Ring widely markets these products as having the capability of operating as a surveillance camera that can automatically trigger recordings when rung, or when its motion

---

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

sensors are activated.[1]

24.     Ring hosts and strongly promotes an app known as "Neighbors," which permits online social sharing of captured video footage among users in an effort to capture video of criminals and increase homeowner safety.

25.     Ring also promotes and advertises how its products enhance homeowner security by providing video footage from its cameras and data from its Neighbors app to law enforcement agencies upon request.[2]

26.     Specifically, Ring promotes that it has partnerships with local police departments in some cities to incorporate the Neighbors app into their crime monitoring processes. Ring has credited the service with having helped to solve crimes, and noted that activity on the service surged in California regions affected by wildfires in November 2018.[3]

27.     Without the video recording, playback and snapshot features on the Ring products, the Neighbors app and its usefulness in improving homeowner security would be rendered useless.

28.     Without the ability to record video and capture still images, or to playback, store and view such video and still images, Ring video doorbells and security cameras are nothing more than expensive electronic alternatives to looking out a window or "peephole" to see who is currently standing in front of the camera.

29.     The video recording, playback and snapshot features are fundamental features of the Ring video doorbells and security cameras. Indeed, the Ring devices lose much of their usefulness and effectiveness without the video recording, playback and snapshot features

---

[1] *See* Paresh, Dave, "Ring modernized the doorbell, then its inventor, Jamie Siminoff, went to war against crime," Los Angeles Times, May 12, 2017, *available at* https://www.latimes.com/business/technology/la-fi-tn-ring-jamie-siminoff-20170412-htmlstory.html.

[2] *See* Schlosser, Kurt, "In first move since Amazon acquisition, Ring launches Neighbors app to help users fight crime," GeekWire, May 8, 2018, *available at* https://www.geekwire.com/2018/first-move-since-amazon-acquisition-ring-launches-neighbors-app-help-users-fight-crime/.

[3] *See* Rubin, Ben Fox, "How Ring's Neighbors app is making home security a social thing," CNET, December 3, 2018, *available at* https://www.cnet.com/news/how-rings-neighbors-app-is-making-home-security-a-social-thing/.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

because, unless a user spends literally all of that user's time looking in real time at the "live feeds" on the Ring device for a possible trespasser, that trespasser is gone before the user can process the notification and pull up the live feed on the device to "catch" the trespasser or would-be criminal.

30.     These video recording, playback and snapshot features of the Ring video doorbell and security camera are only accessible to the consumer, however, if the consumer also buys an additional Protect Plan "subscription" service from Ring and pays a monthly fee of $3, or a yearly fee of $30, per device in perpetuity.

31.     The first Ring video doorbell product offered to the public was the Ring Video Doorbell 1, introduced in 2013. The Ring Video Doorbell 1 is still offered today and currently sells for a price at or around $99.99.

32.     The Ring Video Doorbell 1 (which is not the subject of this lawsuit) was and is sold in brick and mortar stores in a sealed box whose outside packaging clearly states that the video recording, playback and snapshot functions of the product will <u>not</u> function unless the consumer also purchases the Protect Plan subscription service and pays a monthly fee of $3 to Defendant.

33.     Specifically, the back of the sealed box of the Ring Video Doorbell 1 states:

"**Optional Video Recording**
Protect Plans start at only $3/month."

34.     The box for the Ring Video Doorbell 1 also clearly states:

"**Snapshot Capture**
View and save photos with
optional Ring Protect…"

35.     Such language on the box of the Ring Video Doorbell 1 clearly advises consumers of the fact that both the "Video Recording" and "Snapshot Capture" features of the Ring Video Doorbell 1 are **"optional"** and that to activate these features the customer must make an additional purchase of a "Protect Plan" from Ring for $3 per month.

36.     As such, Ring Video Doorbell 1 purchases are not included in any of the proposed class definitions, nor are they the subject of this case.

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

37.     The fact that such notice and disclosure was expressly placed by Defendant on the outside of the sealed box of the Ring Video Doorbell 1—a product which is still being sold today—shows that Defendant considered this information to be material to consumers and/or is aware of its materiality.

38.     Unfortunately, the packaging for many *other* Ring products fails to disclose the $3 monthly or $30 yearly fee, per device, required to use the necessary features of video recording, playback and snapshots, including: the Ring Video Doorbell 2, the Ring Video Doorbell Pro Camera, the Ring Indoor Cam Plug-In Security Camera, the Ring Stick Up Indoor/Outdoor Wired Camera, the Ring Stick Up Indoor/Outdoor Wire-Free Camera, the Ring Spotlight Cam, and the Ring Floodlight Cam.

39.     Plaintiff Andrews' experience highlights this problem.

40.     In March 2020, Mr. Andrews was considering purchasing security camera products for the purpose of adding home security to his home.

41.     On March 11, 2020, Mr. Andrews went to the Best Buy store located in Beaumont, California, to look at video doorbell or security camera purchase options.

42.     While at the store, and prior to making any purchase, Mr. Andrews read the outside boxes for the Ring Indoor Cam Plug-In Security Camera and the Ring Video Doorbell 2 which were stocked on the Best Buy shelves, to learn about these security camera products.

43.     The back of the box for the Ring Indoor Cam Plug-In Security Camera advertised key features of the camera in large, bold blue text, including "**Video Recording**." Nowhere on the box was there a statement or disclosure that he would be required to pay a monthly fee of $3 (or a yearly fee of $30) to use the advertised and basic video recording feature of the camera, or the playback or snapshot features.

44.     The box for the Ring Video Doorbell 2 also advertised various camera and video features. But nowhere on the box was there a statement or disclosure that he would be required to pay a monthly fee of $3 (or a yearly fee of $30) to use the video recording, playback or snapshot features.

45.     Relying on the advertising and product information on the boxes of the two

FIRST AMENDED CLASS
ACTION COMPLAINT

- 9 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1 products, Mr. Andrews reasonably believed that the cameras on the Ring Indoor Cam Plug-In
2 Security Camera and the Ring Video Doorbell 2 could record and play back video and take
3 snapshots—features that were necessary to the utility of the products.

4       46.     Mr. Andrews was never made aware, and did not believe, that he would have to
5 purchase a Protect Plan and pay $3 per month or $30 per year, per device, in order to utilize the
6 video recording, playback and snapshot features of the Ring security camera or video doorbell.
7 Mr. Andrews reasonably believed that the purchase price for the products included the ability
8 to use these fundamental features.

9       47.     Relying on Ring's representations and omissions of material facts, Mr. Andrews
10 purchased the two products and took them home.

11       48.     Once home, Mr. Andrews opened both products and saw information inside the
12 boxes which instructed him how to install and use the products.

13       49.     Mr. Andrews read the installation manual for the Ring Video Doorbell 2 to
14 determine how to install that product, and he saw that page 27 of the manual, entitled "Ring
15 Video Recording," stated: "This optional feature saves recordings of every event your Ring
16 Doorbell captures. You can access these events on any device running the Ring app or by
17 logging into your account … Learn more at ring.com/video-recording." The page further
18 stated: "Your new Ring Doorbell includes a free trial of Ring Recording for you to enjoy."

19

20       50.     Mr. Andrews then went to the suggested webpage ring.com/video-recording,
21 which described the Ring Protect Plan and disclosed to Mr. Andrews for the ***first time*** that in
22 order to enable and access the video recording, playback and snapshot features he would need
23 to agree to and enroll in the Protect Plan service and pay $3 a month (or $30 per year) per
24 device in perpetuity.

25       51.     After learning that he was required to pay a $3 fee per month for each of his
26 devices, Mr. Andrews went back and double-checked the language on the outside of the boxes
27 for both the Ring Indoor Cam Plug-In Security Camera and the Ring Video Doorbell 2.

28       52.     Upon careful inspection he confirmed that ***<u>nowhere</u>*** on the box for either

FIRST AMENDED CLASS
ACTION COMPLAINT      - 10 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

product was it disclosed that he would be required to pay a monthly $3 fee per device (or $30 per year per device) to access the advertised and promised features of video recording, playback, and snapshots.

53.     Mr. Andrews had been defrauded.

54.     Upon further investigation, counsel for Mr. Andrews discovered that the packaging for many other Ring products likewise fails to disclose the $3 monthly or $30 yearly fee per device required to use the necessary features of video recording, playback and snapshots, including: the Ring Video Doorbell Pro Camera, the Ring Stick Up Indoor/Outdoor Wired Camera, the Ring Stick Up Indoor/Outdoor Wire-Free Camera, the Ring Spotlight Cam, and the Ring Floodlight Cam.

55.     Counsel's investigation revealed that the Ring Video Doorbell 1 (which was Ring's very first product) is the only Ring product that discloses on the outside box that a "$3/month" subscription to the Ring Protect service is required to access the recording, playback and snapshot features.

56.     The back of the sealed box of the Ring Video Doorbell 1 states:

> "**Optional Video Recording**
> Protect Plans start at only $3/month."

57.     The box for the Ring Video Doorbell 1 also states:

> "**Snapshot Capture**
> View and save photos with
> optional Ring Protect…"

58.     The disclosures on the Ring Video Doorbell 1 packaging that the video recording, playback and photo snapshot features require an additional $3 monthly fee underscores the materiality of such disclosures.

59.     Clearly, if Ring believed such disclosures were necessary and material to state on the outside box for the Ring Video Doorbell 1 (Ring's very first product), then Ring should have also placed such disclosures on the packaging for <u>all</u> of its video doorbell and security camera products released thereafter.

60.     Ring's misrepresentations and failure to provide such disclosures on all of its products was false and misleading.

FIRST AMENDED CLASS
ACTION COMPLAINT                        - 11 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

61.     Due to this deceptive advertising and failure to disclose, Plaintiff Andrews and the thousands of other members of the classes reasonably believed and expected such video recording, playback and snapshot features were included with the products they purchased, for no additional charge.

62.     These video recording, playback and snapshot features were important to Mr. Andrews and to the members of the classes, and were a primary reason they purchased the Ring products.

63.     The Ring video doorbells and security cameras which lack any notice on their packaging that those critical features require the purchase of a Protect Plan for an additional per-device fee of $3 per month or $30 per year include the Ring Video Doorbell 2 purchased by Plaintiff, as well the Ring Video Doorbell Pro Camera, the Ring Indoor Cam Plug-In Security Camera, the Ring Stick Up Indoor/Outdoor Wired Camera, the Ring Stick Up Indoor/Outdoor Wire-Free Camera, the Ring Spotlight Cam, and the Ring Floodlight Cam.

64.     For all of these products, the first time a consumer is made aware of the fact that the camera will not record video, play back video, or take photo snapshots without the purchase of a Protect Plan subscription for an additional charge of $3 per month or $30 per year, is after purchasing the product.

65.     There is no logical or lawful reason why potential purchasers of the "Ring Doorbell 1" should be advised of these material facts before purchase, while purchasers of other later versions of the Ring video doorbells and security cameras should only be so advised after purchase. All Ring video doorbells and security cameras require the purchase of an additional Protect Plan subscription at a cost of $3 per month or $30 per year per device in order to activate their video recording, playback and snapshot functions.

66.     This lawsuit does not contend that there is any defect with any version of the Ring video doorbells or security cameras, in and of themselves, or that it is inappropriate *per se* to require a purchaser of a Ring video doorbell or security camera to purchase an additional monthly or yearly Protect Plan subscription service in order to use the video recording, playback and snapshot functions of the device.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

67.     Rather, the central claim in this case is that, if Defendant Ring is going to require a consumer who buys a Ring video doorbell or security camera to make an additional purchase of the Protect Plan for $3 per month or $30 per year in order to enable the crucial video recording, playback and snapshot features of the cameras—features without which the cameras are of minimal utility—the existence of this required extra ongoing subscription fee is a material fact that must be stated clearly to a potential purchaser on the box at the point of sale (as Ring still does for the original Ring Video Doorbell 1). The advertising and lack of such notice on the boxes of the Ring video doorbells and security cameras purchased by the proposed classes constitute misrepresentations and omissions of material facts that are deceptive and misleading in violation of California law.

68.     These misrepresentations and omissions have enabled Ring to entice customers to purchase its video security products by misrepresenting the cost customers must pay for Ring products with functioning video recording, playback and snapshot features, both in absolute dollar costs, and relative to the price of *competing* security camera products from other manufacturers which, unlike Ring, often include *free* video recording (including *free* cloud recording), playback and snapshot features without requiring the payment of additional monthly or yearly fees.

69.     Ring's security camera products, which range in price from $59.99 (the Ring Indoor Cam) to $99.99 (the Ring Stick Up Cam) to $199.99 (the Ring Stick Up Cam Elite), include *no* cloud recording, *no* video playback, and *no* snapshot features whatsoever with the selling price. Further, unlike other competing security camera products, Ring's security camera products contain no internal storage and no slot for an SD or microSD flash card to locally store recordings and snapshots, such that the Ring security cameras are of minimal utility and crippledwithout a Protect Plan subscription for an additional $3 per month or $30 per year per device.

70.     In contrast, numerous other competing security camera products—unlike Ring's security camera products—*include* some amount of free cloud video recording, free video playback and free photo snapshots at no extra cost above the product's initial purchase price.

FIRST AMENDED CLASS
ACTION COMPLAINT                          - 13 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

For example, Amazon.com, Inc—which is the parent company of Ring LLC—manufactures and offers on its website its own Amazon-branded "Amazon Cloud Cam Indoor Security Camera," whose $119.99 selling price *includes free* cloud recording, *free* playback and *free* snapshots for the past 24-hour period. Similarly, Wyze Labs, Inc. offers *free* cloud storage of videos and snapshots for a 14-day period for its Wyze Cam security cameras, whose selling prices start at only $25.98 on Amazon.com. Arlo Technologies, Inc. also offers *free* cloud storage for a 7-day period for its popular Arlo line of security cameras, and Canary Connect, Inc. offers *free* cloud storage for a 24-hour period for its Canary security cameras.

71.     Likewise, many competing video doorbell products—unlike Ring's video doorbell products—*include* some amount of free cloud video recording, free video playback, and free snapshots at no extra cost above the product's initial purchase price. For example, Remo+ offers *free* cloud storage of videos and snapshots for a 3-day period for its Remo video doorbell products, whose selling prices start at $99.99.

72.     And other competing video doorbell products—unlike Ring's video doorbell products—allow consumers to locally store and play back recorded video for no charge without requiring a cloud subscription. For example, Anker Technology Ltd.'s "eufy" video doorbells, whose list prices start at $159.99, contain enough internal memory to store and play back up to 30 days of motion-triggered recorded video for *free*, such that no cloud subscription or additional payments are required to utilize the video recording, playback and snapshot features of the devices.

73.     In sum, based on Ring's misrepresentations and omissions of material facts, class members reasonably assumed and understood, just as Plaintiff James Andrews did, that the video recording, playback and snapshot features of the Ring video doorbells and security cameras they purchased were included in the purchase price they paid. A reasonable consumer would not understand or expect that these fundamental security features in fact required an additional subscription of $3 per month or $30 per year, per device, in perpetuity.

74.     Mr. Andrews reasonably relied on Defendant's misrepresentations and omissions of material facts. If Mr. Andrews had known the truth, he would have acted

FIRST AMENDED CLASS
ACTION COMPLAINT                          - 14 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

differently and would not have purchased the Ring Video Doorbell 2 and the Ring Indoor Cam Plug-In Security Camera at the prices he paid, or he would have purchased other products instead.

75.     These misrepresentations and omissions by Defendant are material, in that they are the type of representations on which an ordinary prudent person would rely upon in conducting his or her affairs.

76.     As a direct and proximate result of Defendant's acts and omissions, Mr. Andrews was harmed, suffered an injury-in-fact, and lost money or property.

77.     Mr. Andrews has a legal right to rely now, and in the future, on the truthfulness and accuracy of Defendant's representations and indications, including on the outside packaging for Ring video doorbells and security cameras, that the expected video recording, playback and snapshot features are included with the purchase price of those products.

78.     Mr. Andrews would purchase Ring products again if he could have confidence regarding the truth of Defendant's representations of the features included with the purchase price of the products.

79.     Mr. Andrews will be harmed if, in the future, he is left to guess as to whether Ring's representations are accurate and whether there are omissions of material facts regarding the features included in the purchase price of Ring products.

80.     If Mr. Andrews were to purchase a Ring video doorbell, security camera or other product again from Defendant without Defendant having changed its unlawful and deceptive conduct alleged herein, Mr. Andrews would be harmed on an ongoing basis and/or would be harmed once or more in the future.

## CLASS ACTION ALLEGATIONS

81.     Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

82.     **Nationwide Class**:  Plaintiff seeks to represent the following "Nationwide Class":

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

> **All United States citizens who, during the applicable limitations period, purchased any Ring video doorbell or security camera product at a brick and mortar store in the United States where the outside box did not contain any language which indicated that the video recording, playback or snapshot features of the camera could only be accessed if the consumer also purchased an additional Protect Plan subscription for a monthly or annual fee.**

83.     **Product Subclass**: Plaintiff also seeks to represent the following "Product Subclass":

> **All United States citizens who, during the applicable limitations period, purchased a "Ring Video Doorbell 2" or a "Ring Indoor Plug-In Security Camera" product at a brick and mortar store in the United States.**

84.     **California Subclass**:  Plaintiff seeks to represent the following "California Subclass":

> **All California citizens who, during the applicable limitations period, purchased any Ring video doorbell or security camera product at a brick and mortar store in California where the outside box did not contain any language which indicated that the video recording, playback or snapshot features of the camera could only be accessed if the consumer also purchased an additional Protect Plan subscription for a monthly or annual fee.**

85.     **California Product Subclass**: Plaintiff also seeks to represent the following "California Product Subclass":

> **All California citizens who, during the applicable limitations period, purchased a "Ring Video Doorbell 2" or a "Ring Indoor Cam Plug-In Security Camera" product at a brick and mortar store in California.**

86.     Specifically excluded from the class and subclasses are Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in Defendant, Defendant's agents and employees and attorneys, the bench officers to whom this civil action is assigned, the members of each bench officer's staff and immediate family, and class counsel.

87.     ***Numerosity.*** Plaintiff does not know the exact number of class members, but is informed and believe that the classes easily comprise thousands of individuals. As such, class members are so numerous that joinder of all members is impracticable.

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

88.     No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendant, or of any subject belief of Plaintiff or an individual class member.

89.     ***Commonality and Predominance.*** Well-defined, identical legal or factual questions affect the members of the classes. All claims in this matter arise from the identical written advertising and omissions of material facts on the outside packaging of the products purchased by the relevant class and subclass members, none of which contains any language which would advise the purchaser that the video recording, playback or snapshot features of the camera could only be accessed if the consumer also purchased an additional subscription for a fee of $3 per month or $30 per year. These questions predominate over questions that might affect individual class members. These common questions include, but are not limited to, the following:

a.     Whether Ring's failure to state on the product packaging of its video doorbell and security camera products that the video recording, playback and snapshot features could only be accessed if the consumer paid an additional monthly fee of $3 or yearly fee of $30 was an omission of material facts in violation of California law;

b.     Whether Defendant's decision to include statements on the sealed outside packaging of the Ring Video Doorbell 1 that advised consumers that the video recording, playback and snapshot features of the product could only be accessed if the consumer paid an additional $3/month subscription fee, should be deemed an admission that those facts were material to potential customers;

c.     Whether Defendant's misrepresentations and omissions alleged herein constitute fraudulent concealment under California law;

d.     Whether Defendant's conduct as outlined herein violated the False Advertising Law, California Business and Professions Code § 17500 *et seq*.;

e.     Whether Defendant's conduct as outlined herein violated the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*;

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

f.      Whether Defendant's conduct as outlined herein violated California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*;

g.      Whether Plaintiff and the classes have suffered injury and have lost money or property as a result of Defendant's misrepresentations and omissions alleged herein;

h.      Whether Defendant should be ordered to disgorge its unjust enrichment;

i.      Whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and

90.      Whether Plaintiff and the classes are entitled to an order for class-wide injunctive relief, imposing equitable remedies such as restitution and/or requiring Ring to give Plaintiff and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

91.      The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes which would establish incompatible standards of conduct for the parties opposing the classes.

92.      ***Typicality.*** Plaintiff is a member of the classes and subclasses he seeks to represent. The claims of Plaintiff are not only typical of all class and subclass members, they are identical.

93.      All claims of Plaintiff and the classes arise from the same misrepresentations and omissions of material fact on the sealed outside of the product packaging for Ring doorbell cameras and security cameras.

94.      All claims of Plaintiff and the classes are based on the exact same legal theories.

95.      ***Adequacy.*** Plaintiff has no interest antagonistic to, or in conflict with the classes. Plaintiff will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent himself and the classes.

96.      Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each class member's interests are small compared to

FIRST AMENDED CLASS
ACTION COMPLAINT                    - 18 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for class members to seek individual redress for Defendant's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

97.     By their conduct and omissions alleged herein, Defendant has acted and refused to act on grounds that apply generally to the classes, such that final injunctive relief and/or declaratory relief is appropriate respecting the classes as a whole.

98.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

99.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member are too small to make individual actions economically feasible.

100.    Common questions will predominate, and there will be no unusual manageability issues.

## **CAUSES OF ACTION**

### **COUNT I**
**Violation of the Consumers Legal Remedies Act**
**California Civil Code § 1750 *et seq.***

101.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

102.    Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the classes.

103.    Defendant is a "person," as defined by California Civil Code § 1761(c).

FIRST AMENDED CLASS
ACTION COMPLAINT                              - 19 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

104.    Plaintiff and class members are "consumers," as defined by California Civil Code § 1761(d).

105.    The Ring video doorbells and security cameras purchased by Plaintiff and the class members are "goods" as defined by California Civil Code § 1761(a).

106.    The purchases by Plaintiff and the class members constitute "transactions," as defined by California Civil Code § 1761(e).

107.    The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant did not result from a *bona fide* error notwithstanding the use of reasonable procedures adopted to avoid such error.

108.    With regard to this count of the pleading which alleges one or more violations of the CLRA, venue is proper in Riverside County, California (the county in which this action has been commenced) pursuant to Section 1780(d) of the California Civil Code because, without limitation, Riverside County is a county in which Defendant is doing business and is the county where the transaction which is the subject of this lawsuit occurred. A declaration establishing that this Court has proper venue for this count is attached hereto as **Exhibit A**.

109.    Defendant's methods, acts and/or practices, including Defendant's misrepresentations, active concealment, and/or failures to disclose, violated and continue to violate the CLRA in ways including, but not limited to, the following:

a.    Defendant misrepresented that its products had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b.    Defendant advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

c.    Defendant represented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

110.    Specifically, Defendant advertised and represented that its products had the ability to record and playback video and capture snapshots, but in reality these material features

were available only upon the purchaser's payment of an additional $3 per month or $30 per year per device to Defendant.

111.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the classes; (b) Defendant concealed material information from Plaintiff and the classes; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

112.    Defendant's misrepresentations and nondisclosures deceive and have a tendency and ability to deceive the general public.

113.    Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions. Indeed, the utility and value of Defendant's Ring doorbell and security camera products are significantly reduced, almost to the point of worthlessness, without the ability to record and playback video and capture snapshots.

114.    As a direct and proximate result of Defendant's unfair, unlawful and fraudulent conduct, Plaintiff and the classes suffered injury-in-fact and lost money.

115.    But for Defendant's omissions of material facts and Defendant's deceptive conduct, Plaintiff and the classes made purchases they otherwise would not have made, and paid more than they otherwise would have paid for the products they purchased.

116.    Defendant's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Defendant to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

117.    Defendant's conduct as alleged herein caused substantial injury to Plaintiff, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff and the classes seek an order enjoining Defendant from committing such practices.

FIRST AMENDED CLASS
ACTION COMPLAINT

- 21 -

118.     Plaintiff, on behalf of himself and the classes, seeks injunctive relief to require Defendant to give Plaintiff and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

119.     If not enjoined by order of this Court, Defendant is free to resume its unlawful behavior and injure Plaintiff and consumers in the United States through the misconduct alleged herein once more. Defendant has a duty to speak truthfully or in a non-misleading manner.

120.     Plaintiff would purchase Ring products again if he could have confidence regarding the truth of Defendant's representations of the features included with the purchase price of the products.

121.     Plaintiff will be harmed if, in the future, he is left to guess as to whether Defendant's representations are accurate and whether there are omissions of material facts regarding the features included in the purchase price of Ring products.

122.     If Plaintiff were to purchase a Ring video doorbell or other product again from Defendant without Defendant having changed its unlawful and deceptive conduct alleged herein, Plaintiff would be harmed on an ongoing basis and/or would be harmed once or more in the future.

123.     In order to prevent injury to the general public, Plaintiff, in his individual capacity, seeks a public injunction requiring Defendant to disclose, on the outside of the boxes of its Ring video doorbell and security camera products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month or $30 per year.

124.     The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a

FIRST AMENDED CLASS
ACTION COMPLAINT                    - 22 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  permanent injunction.

2       125.    In accordance with California Civil Code § 1782(a), on April 2, 2020, Plaintiff's

3  counsel served Defendant with notice of its CLRA violations, addressed to the CEO at Ring's

4  headquarters in Santa Monica, California, by Federal Express overnight airmail; the notice was

5  received by Defendant on April 3, 2020. On April 7, 2020, Plaintiff's counsel served additional

6  copies of the CLRA demand notice via USPS certified mail, return receipt requested, including

7  to Ring LLC's registered agent for service of process in California. True and correct copies of

8  those notices are attached hereto as **Exhibit B**. Defendant's agent for service of process, CSC

9  Lawyers Incorporating Service, received the CLRA demand notice on April 10, 2020 as

10  evidenced by the proof of delivery printed from the USPS website attached hereto in **Exhibit**

11  **C**. Defendant also directly received the CLRA demand notice at Ring LLC's Santa Monica,

12  California headquarters on April 13, 2020 as evidenced by the proof of delivery printed from

13  the USPS website and also attached hereto in **Exhibit C**.

14       126.    Defendant failed to give, or to agree to give within a reasonable time, an

15  appropriate correction, repair, replacement, or other remedy for its CLRA violations within 30

16  days of its receipt of the CLRA demand notice. Defendant has continued to fail to give, or to

17  agree to give within a reasonable time, an appropriate correction, repair, replacement, or other

18  remedy for its CLRA violations. Accordingly, pursuant to Sections 1780 and 1782(b) of the

19  CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and

20  costs, and any other relief the Court deems proper for Defendant's CLRA violations.

21                                  **COUNT II**
              **Violation of California's False Advertising Law**

22        **California Business and Professions Code § 17500 *et seq.***

23       127.    Plaintiff realleges and incorporates by reference all paragraphs previously

24  alleged herein.

25       128.    Plaintiff brings this claim in his individual capacity, in his capacity as a private

26  attorney general seeking the imposition of public injunctive relief, and/or as a representative of

27  the putative classes.

28

FIRST AMENDED CLASS
ACTION COMPLAINT

- 23 -

129. Defendant has engaged in false or misleading advertising in violation of California's statutory False Advertising Law ("FAL").

130. Defendant's conduct as described herein is misleading, and/or has a capacity, likelihood or tendency to deceive reasonable consumers. *See, e.g.*, *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (2002)(UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc*., 25 Cal. App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (same).

131. Defendant, with intent directly or indirectly to dispose of personal property or to perform services, or to induce the public to enter into any obligation relating thereto, makes, disseminates, has made or disseminated, causes to be made or disseminated, and/or has caused to be made or disseminated, before the public in the United States, in newspaper or other publication, or other advertising device, or by public outcry or by proclamation, or in any other manner or means, including over the internet, statements concerning that personal property or those services, and/or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which are untrue or misleading and which are known (or which by the exercise of reasonable care should be known) to be untrue or misleading.

132. With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the classes; (b) Defendant concealed material information from Plaintiff and the classes; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

133. Defendant committed such violations of the False Advertising Law with actual knowledge that its advertising was misleading, or Defendant, in the exercise of reasonable care, should have known that its advertising was misleading.

FIRST AMENDED CLASS
ACTION COMPLAINT

- 24 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

134.     Plaintiff and the classes reasonably relied on Defendant's representations and/or omissions made in violation of the False Advertising Law.

135.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiff and the classes suffered injury-in-fact and lost money.

136.     But for Defendant's omissions of material facts and Defendant's deceptive conduct, Plaintiff and the classes made purchases they otherwise would not have made, and paid more than they otherwise would have paid for the products they purchased.

137.     Defendant's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Defendant to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

138.     Defendant should be ordered to disgorge or make restitution of all monies improperly accepted, received or retained.

139.     Defendant's conduct has caused substantial injury to Plaintiff, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendant from committing such violations of the FAL. Plaintiff further seeks an order granting restitution to Plaintiff and the classes in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

140.     Plaintiff, on behalf of himself and the classes, seeks injunctive relief to require Defendant to give Plaintiff and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

141.     Absent injunctive relief, Defendant will continue to injure Plaintiff and the class members. Defendant's demands that class members pay an additional monthly or yearly fee in order to make their devices function properly are ongoing. Even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant.

142.     In order to prevent injury to the general public, Plaintiff, in his individual

FIRST AMENDED CLASS
ACTION COMPLAINT                    - 25 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

capacity, seeks a public injunction requiring Defendant to disclose, on the outside of the boxes of its Ring video doorbell and security camera products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month or $30 per year.

143.    Plaintiff and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

**COUNT III**
**Violation of California's Unfair Competition Law**
**California Business and Professions Code § 17200 *et seq.***

144.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

145.    Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of a putative class.

146.    Defendant's acts and omissions alleged herein constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 et seq. (the "Unfair Competition Law" or "UCL").

147.    Defendant's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the classes. There is no utility to Defendant's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Defendant's conduct alleged herein.

148.    Defendant's conduct and omissions alleged herein also violate California public policy, including as such policy is reflected in Cal. Civ. Code § 1750 *et seq.* and Cal. Civ. Code §§ 1709-1710.

149.    By its conduct and omissions alleged herein, Defendant has violated the "unlawful" prong of the UCL, including by making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq*. and Cal. Civ. Code § 1750, *et seq*.; and engaging in deceit and fraudulent concealment in violation of Cal Civ. Code §§ 1709-1710, *et*

---

FIRST AMENDED CLASS
ACTION COMPLAINT

- 26 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

*seq.*

150.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the classes; (b) Defendant concealed material information from Plaintiff and the classes; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

151.    Defendant's material misrepresentations and nondisclosures were likely to mislead reasonable consumers, existing and potential customers, and the public.

152.    Defendant's nondisclosures and omissions of material facts deceive and have a tendency to deceive the general public and reasonable consumers, and therefore were unfair and fraudulent.

153.    Defendant's nondisclosures and omissions of material facts are material, such that a reasonable person would attach importance to the information and would be induced to act on the omissions in making purchase decisions.

154.    Plaintiff and members of the classes reasonably relied on Defendant's nondisclosures and omissions of material facts, and would have acted differently if they had known the truth.

155.    By its conduct and omissions alleged herein, Defendant received more money from Plaintiff and the classes than it should have received, and that money is subject to restitution.

156.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiff and the classes suffered injury-in-fact and lost money.

157.    But for Defendant's omissions of material facts and Defendant's deceptive conduct, Plaintiff and the classes made purchases they otherwise would not have made, and paid more than they otherwise would have paid for the products they purchased.

158.    Defendant's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Defendant to charge its customers more than it otherwise could have charged and to

FIRST AMENDED CLASS
ACTION COMPLAINT                                      - 27 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   generate more sales than it otherwise would have generated.

2        159.    Plaintiff, on behalf of himself and the classes, seeks injunctive relief to require

3   Defendant to give Plaintiff and class members the ability to use the video recording, playback,

4   and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any

5   additional fee) for the life of those devices.

6        160.    Defendant's conduct has caused substantial injury to Plaintiff, class members,

7   and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent

8   injunction. Accordingly, Plaintiff seek an order enjoining Defendant from committing such

9   unlawful, unfair, and fraudulent business practices. Plaintiff further seeks an order granting

10  restitution to Plaintiff and the classes in an amount to be proven at trial. Plaintiff further seeks

11  an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

12       161.    Plaintiff and the general public lack an adequate remedy at law to remedy and/or

13  mitigate the totality of the injuries and misconduct described herein.

14       162.    Absent injunctive relief, Defendant will continue to injure Plaintiff and the class

15  members. Defendant's conduct and omissions of material fact are ongoing and Defendant

16  continues to demand payment of an additional monthly or yearly fee in order to enable the

17  promised core features of video recording, playback and snapshots. Moreover, even if such

18  conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant.

19       163.    Plaintiff, in his individual capacity, seeks public injunctive relief under the UCL

20  to protect the general public from Defendant's deceptive conduct, false advertising, and

21  omissions of material facts. Specifically, in order to prevent injury to the general public,

22  Plaintiff, in his individual capacity, seeks a public injunction requiring Defendant to disclose,

23  on the outside of the boxes of its Ring video doorbell and security camera products, that the

24  video recording, playback and snapshot features of the products will not function unless the

25  purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month

26  or $30 per year.

27

28

---

FIRST AMENDED CLASS
ACTION COMPLAINT     - 28 -     **HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**PRAYER FOR RELIEF**

164.   In order to prevent injury to the general public, Plaintiff James Andrews asks that the Court enter a public injunction requiring Defendant to prominently disclose, on the outside of the boxes of its Ring video doorbell and security camera products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional fee of $3 per month or $30 per year, per device.

165.   Further, on behalf of himself and the proposed classes, Plaintiff requests that the Court order relief and enter judgment against Defendant as follows:

a.   Declare this action to be a proper class action, certifying the classes defined herein, and appoint Plaintiff and his counsel to represent the classes;

b.   Order disgorgement or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly or indirectly, from Plaintiff and the members of the classes or otherwise as a result of the unlawful conduct alleged herein;

c.   Permanently enjoining Defendant from the unlawful conduct alleged herein;

d.   Order Defendant to give Plaintiff and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices;

e.   Retain jurisdiction to police Defendant's compliance with the permanent injunctive relief;

f.   Order Defendant to pay damages to Plaintiff and class members in an amount to be proven at trial;

g.   Order Defendant to pay punitive and exemplary damages to the extent allowed by law;

h.   Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1            i.      Provide all other relief to which Plaintiff and the classes may show

2 themselves justly entitled.

### JURY DEMAND

4      Plaintiff James Andrews, on behalf of himself and on behalf of the classes, demands a

5 trial by jury on all issues so triable.

6      DATED this 20th day of May, 2020.

7                           Presented by:

8                           HATTIS & LUKACS

9                           By: _____

10                           Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)

11                           HATTIS & LUKACS
400 108th Ave NE, Ste 500

12                           Bellevue, WA 98004
Telephone: (425) 233-8650

13                           Facsimile: (425) 412-7171
Email: dan@hattislaw.com

14                           Email: pkl@hattislaw.com

15                           Stephen DeNittis, Esq.*
Shane T. Prince, Esq.*

16                           DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410

17                           525 Route 73 N.
Marlton, New Jersey 08057

18                           Telephone: (856) 797-9951
Facsimile: (856) 797-9978

19                           Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

20                           *Attorneys for Plaintiff and the Proposed Classes*

21                           *Pro hac vice application to be submitted*

22

23

24

25

26

27

28

FIRST AMENDED CLASS
ACTION COMPLAINT       - 30 -       **HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com